**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

United States of America,                               Case No. 3:11CR508

        Plaintiff

    v.                                                      **ORDER**

Goldy Thompson,

        Defendant

The defendant, charged with being a felon unlawfully in possession of a firearm, has filed a motion to suppress. (Doc. 11). Following a hearing and submission of post-hearing briefs, the motion is decisional. For the reasons that follow, I deny the motion.

**Background**

On October 12, 2011, the Toledo Police Department dispatcher received a 911 call. The caller, who identified herself as Alice King, stated she was calling from behind the bar at the Quality Bar in Toledo. Ms. King, presumably a bartender, appeared to be getting her information from a patron. She told the dispatcher that a man in the bar was threatening someone with a gun. She described the individual as a black male wearing all black clothes. She also stated during the call that the man with the gun had left.

TPD Officers Bocik and Williamson responded to the call and heard the description of the man with the gun. On arrival, they immediately encountered the defendant Goldy Thompson, outside the Quality Bar. Officer Bocik told the defendant to stop; he did not do so, and the Officer repeated his command.

Rather than obeying, the defendant approached the Officer, shoved him, and sought to continue on his way. The officers took hold of the defendant, got him on the ground, and subdued and apprehended him. In the meantime, he had sought to discard the weapon which gives rise to the charge against him.

The defendant, a black male, was wearing black clothing. He was leaving the premises as the Officers arrived. There was a small number of other people outside the bar. It does not appear from the record that the officers ever went inside the bar; in any event, if they did, they did not do so until after arresting the defendant.

## Discussion

The determinative issues are: 1) whether the 911 call provided a basis, if one was necessary, for calling on the defendant to stop to talk with the officers; 2) when was the defendant "seized" in constitutional terms; and 3) were the seizure and ensuing acquisition of the gun lawful.

With regard to the 911 call, I conclude that it was sufficiently reliable to authorize the officers to detain the defendant briefly to ascertain whether he was the individual about whom Ms. King had told the dispatcher.[1] This was not an anonymous individual calling from some unknown

---

[1] Though the parties do not discuss the issue, it was also appropriate for the officers, even if the defendant did not fit the description of the individual with the gun, to stop him from leaving to find out whether he knew anything about what was going on the bar. They were about to enter into a potentially dangerous situation, and it behooved them, before doing so, to learn as much as they could from someone who may have been inside while the 911 call was occurring. There was

location. Instead, she identified herself and where she was. These are facts which the officers could, had they needed to, have readily confirmed. Indeed, it is likely, that they, had they entered the bar, would have confirmed them almost immediately thereafter.

The information obtained from the call was sufficiently reliable and verifiable to justify detaining – and thus seizing – the defendant briefly. It justified a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information" and thus was "most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972). This is particularly so, given what prompted the call for assistance – a man threatening someone in a crowded bar. At the very least, as noted, the officers were justified in trying to speak to someone who appeared to be leaving to find out whether he had any information that would help them before they went inside.

To some extent, the foregoing does not matter, because the officers did not seize the defendant when they instructed him to stop. *California v. Hodari D.*, 499 U.S. 621, 626 (1991) (defendant fleeing from officers not seized when ordered to stop); *U.S. v. Jones,* 673 F.3d 497, 502 (6th Cir. 2012) ("because Defendant did not comply with [officer's] commands to stop, he was not seized until [officer] physically restrained him by taking him down and handcuffing him").

Moreover, by the defendant's own actions he made clear that he did not believe his freedom of movement had been impaired. Instead, he kept on walking and shoved Officer Bocik as he was heading on his way. This was not the action of someone who believed his freedom of movement had been curtailed.

---

a distinct public safety aspect to their actions: either the defendant was the man with the gun or he may have been a useful source of information.

Once the defendant shoved the officer, he had committed the offense of assault on a police officer; this gave rise to the right to seize the defendant by arresting him, and not just detaining him for investigatory purpose. In doing so, the officers could, and did use reasonable and necessary force to bring the defendant under control. In the midst of doing so, his gun was seen and seized lawfully.[2]

The defendant argues, and accurately so, that several other individuals in the bar would have fit the somewhat generic description of a black male wearing black clothing. Had the officers entered the bar before encountering the defendant, this might have created problems. At that point it might well have been incumbent on them to obtain further details, and/or an actual identification before turning to the defendant as the focus of an investigatory inquiry.

That does not matter. Before they had entered the bar, the officers had arrested a man meeting the description obtained *via* the 911 call. The defendant may not have been the subject of the 911 call, but that does not undo the lawfulness of what the officers did.

There was nothing constitutionally deficient in the events leading to the seizure of the weapon on which the government bases its charge against the defendant. It is, accordingly,

ORDERED THAT the defendant's motion to suppress (Doc. 11) be, and the same hereby is overruled.

A pretrial conference with counsel is scheduled for July 9, 2012 at 2:00 p.m.

So ordered.

/s/ James G. Carr

---

[2] Even if the encounter prior to the defendant's shoving of the officer had constituted a seizure – which it did not – the defendant's act of shoving the officer was an independent act on the defendant's part, which attenuated the taint of any fleeting prior seizure.

                                                Sr. United States District Judge